RECEIVED CLERK
U.S. DISTRICT COURT

2006 JAN 20 P 2:45

Lois H. Goodman, Esq.
Craig Koster, Esq.
**McELROY, DEUTSCH, MULVANEY & CARPENTER LLP**
Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-7711
Attorneys For Plaintiff
Ramada Worldwide Inc.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RAMADA WORLDWIDE INC., formerly known as Ramada Franchise Systems, Inc., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMKO FINANCIAL and ASPI IRANI, an Individual, and SOON TAE KANG, an Individual,<br><br>Defendants. | Civil Action No. 06-0295(HAA)<br><br>**COMPLAINT** |

Plaintiff, Ramada Worldwide Inc., by its attorneys, McElroy, Deutsch, Mulvaney, & Carpenter, LLP, complaining of defendants Amko Financial and Aspi Irani and Soon Tae Kang, says:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff, Ramada Worldwide, Inc. ("RWI"), formerly known as and a successor to Ramada Franchise Systems, Inc., is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Parsippany, New Jersey.

2. Defendant Amko Financial ("Amko"), on information and belief, is a limited liability corporation organized and existing under the laws of the State of Florida, with its principal place of business at 9200 West Highway 192, Clermont, Florida 34711.

3. Defendant, Aspi Irani ("Irani"), on information and belief, is a citizen of the State of New Jersey, residing at 21 E. Park Place, 2nd Floor, Rutherford, New Jersey 07070.

4. Defendant, Soon Tae Kang ("Kang"), on information and belief, is a citizen of the State of New Jersey, residing at 21 E. Park Place, 2nd Floor, Rutherford, New Jersey 07070.

5. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1338, 15 U.S.C. § 1121 & 1124 and, with respect to certain claims, 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Amko by virtue of, among other things, Section 17.6.3 of the February 12, 2002, License Agreement by and between Amko and RWI (the "License Agreement"), described in more detail below, pursuant to which Amko has consented "to the non-exclusive personal jurisdiction of and venue in the New Jersey state courts situated in Morris County, New Jersey and the United States District Court for the District of New Jersey. . . ."

7. This Court has personal jurisdiction over Irani and Kang by virtue of, among other things, the terms of the Guaranty (the "Guaranty"), described in more detail below, pursuant to which Irani and Kang acknowledged that they were personally bound by Section 17 of the License Agreement, including Section 17.6 (Choice of Law; Venue; Dispute Resolution) and Section 17.6.4 (Waiver of Jury Trial).

8. Venue is proper in this District pursuant to Section 17.6.3 of the License Agreement, inasmuch as that provision contains an express waiver by Amko, Irani and Kang of any objection to venue in this District.

**ALLEGATIONS COMMON TO ALL COUNTS**

**The Ramada Marks**

9. RWI is one of the largest guest lodging facility franchise systems in the United States, and is widely known as a provider of guest lodging facility services.

10. RWI has the exclusive right to sublicense the use of various trade names and service marks (which are on the principal register of the United States Patent and Trademark Office), logos, and derivations thereof (the "Ramada Marks"), as well as the distinctive Ramada® System, which provides hotel services to the public under the Ramada name and certain services to its licensees, including a centralized reservation system, advertising, publicity, and training services.

11. RWI or its predecessors have continuously used each of the Ramada Marks since the date of their registration and these marks are in full force and effect pursuant to 15 U.S.C. § 1065.

12. RWI has given notice to the public of the registration of the Ramada Marks as provided in 15 U.S.C. § 1111.

13. RWI uses or has used the words "Ramada," "Ramada Plaza Hotel," "Ramada Inn," and "Ramada Limited," among others, as abbreviations of its brand name.

14. Through its franchise system, RWI markets, promotes, and provides services to its guest lodging franchisees throughout the United States. In order to identify the

origin of their guest lodging services, RWI allows its franchisees to utilize the Ramada Marks and to promote the Ramada brand name.

15. RWI has invested substantial effort over a long period of time, including the expenditure of millions of dollars, to develop goodwill in its trade names and service marks to cause consumers throughout the United States to recognize the Ramada Marks as distinctly designating RWI guest lodging services as originating with RWI.

16. The value of the goodwill developed in the Ramada Marks does not admit of precise monetary calculation, but because RWI is one of the largest guest lodging facility franchise systems in the United States and is widely known as a provider of guest lodging facility services, the value of RWI' goodwill exceeds hundreds of millions of dollars.

17. The Ramada Marks are indisputably among the most famous in the United States.

**The Agreements Between The Parties**

18. On or about February 12, 2002, RWI entered into the License Agreement with Amko for the operation of a 198-room guest lodging facility located at 9200 West Highway 192, Clermont, Florida 34711, Site No. 1621 (the "Facility"). A true copy of the License Agreement is attached hereto as Exhibit A.

19. Pursuant to Section 5 of the License Agreement, Amko was obligated to operate a Ramada guest lodging facility for a 15-year term, during which time Amko was permitted to use the Ramada Marks in association with the operation and use of the Facility as part of RWI's franchise system.

20. Pursuant to Section 3 of the License Agreement, Amko was required, among other things, to make renovations to the Facility, in order to bring the Facility into compliance with "Design Standards," "System Standards," "Approved Plans," and/or a "Punch List," all of which were defined in or attached to the License Agreement, and to achieve and maintain certain scores on periodic quality assurance inspections conducted by RWI.

21. Pursuant to Section 3.4 of the License Agreement, Amko was required to operate the Facility in compliance with RWI's "System Standards," as defined in the License Agreement, including RWI's quality assurance requirements.

22. Pursuant to Section 4.8 of the License Agreement, RWI had the "unlimited right to conduct unannounced quality assurance inspections of the Facility and its operations, records and Mark usage" (and unlimited reinspections if the Facility received a failing score in the inspection) to determine whether the Facility was in compliance with RWI's quality assurance requirements.

23. Pursuant to Sections 7 and 18.4 and Schedule C of the License Agreement, Amko was required to make certain periodic payments to RWI for royalties, marketing assessments, taxes, interest, reservation system assessments, and other fees (collectively, "Recurring Fees").

24. Pursuant to Section 3.8 of the License Agreement, Amko agreed to maintain accurate financial information, including books, records, and accounts for the Facility and allow RWI to examine, audit, and make copies of the entries in these books, records, and accounts.

25. Pursuant to Section 11.2 of the License Agreement, RWI could terminate the License Agreement, with notice to Amko, for the following reasons: (a) failure to pay any amount due RWI under the License Agreement, (b) failure to remedy any other default of its obligations or warranties under the License Agreement within 30 days after receipt of written notice from RWI specifying one or more defaults under the License Agreement, and/or (c) receipt of two or more notices of default under the License Agreement in any one year period, whether or not the defaults were cured.

26. Pursuant to Section 12.1 of the License Agreement, Amko agreed that, in the event of a termination of the License Agreement pursuant to Section 11.2, it would pay liquidated damages to RWI in accordance with a formula specified in Section 18.3 of the License Agreement.

27. Section 13 of the License Agreement specified Amko's obligations in the event of a termination of the License Agreement, including its obligation to immediately cease using all of the Ramada Marks.

28. Pursuant to section 17.4 of the License Agreement, Amko agreed that the non-prevailing party would "pay all costs and expenses, including reasonable attorney's fees, incurred by the prevailing party to enforce this [License] Agreement or collect amounts owed under this [License] Agreement."

29. Effective as of the date of the License Agreement, Irani and Kang provided RWI with a Guaranty of Amko's obligations under the License Agreement ("Guaranty"). A true copy of the Guaranty is attached hereto as Exhibit B.

30. Pursuant to the terms of the Guaranty, Irani and Kang agreed, among other things, that upon a default under the License Agreement, they would "immediately make each payment and perform or cause Licensee to perform, each unpaid or unperformed obligation of Licensee under the [License] Agreement."

**The Defendants' Defaults and Termination**

31. Amko has repeatedly failed to operate the Facility in accordance with RWI's System Standards, in breach of its obligations under the License Agreement.

32. On August 9, 2002, RWI conducted a quality assurance ("QA") inspection of the Facility. See August 9, 2002, report, a true copy of which is attached hereto as Exhibit C. Amko received a QA failing score of 392 and an automatic failure in the food and beverage segment.

33. On January 13, 2003, RWI conducted another QA inspection of the Facility. See January 13, 2003, report, a true copy of which is attached hereto as Exhibit D. Amko received a failing score of 284 in the QA inspection.

34. On January 24, 2003, RWI notified Amko by way of a letter, a true copy of which is attached hereto as Exhibit E, that it was in default of its obligations under the License Agreement based upon its failure to maintain the required QA inspection score under the Agreement. The letter also notified Amko that the Lease Agreement was being terminated, effective April 8, 2003, unless its QA default was cured. A QA inspection was scheduled for on or about March 24, 2003 and Amko was required to receive a QA score of at least 400. Amko was notified that upon termination of the License Agreement, it would lose its right to continue

to use the property management system and would be obligated to pay liquidated damages and perform post-termination obligations such as removal of all Ramada identification at the Facility.

35. On April 4, 2003, RWI conducted a reinspection of the Facility and it received a failing QA score of 365. See April 4, 2003, report, a true copy of which is attached as Exhibit F.

36. On or about April 25, 2003, RWI notified Amko and the guarantors via letter that the License Agreement was terminated effective as of April 25, 2003. Amko and the guarantors were specifically advised that they must perform their post-termination obligations such as the removal of all items that display or refer to Ramada at the Facility, payment of the full amount of all Recurring Fees, Liquidated Damages, and all other charges due under the License Agreement. See April 25, 2003, termination letter, a true copy of which is attached as Exhibit G.

37. After the termination of the License Agreement, Amko continued to use the Ramada Marks without authorization to rent rooms through, among other things, failure to remove Ramada primary signage, failure to remove all additional exterior signage, failure to remove signage from the interior public areas of the Facility, failure to change billboards to remove the Ramada name, continuing to answer the telephone using the Ramada name, and continuing to use items bearing the Ramada trade name.

38. On January 8, 2004, a post termination obligations inspection of the Facility was conducted, during which it was discovered that Amko was continuing to use the Ramada Marks without authorization. See the January 8, 2004, Post Termination Obligations Checklist inspection report, a true copy of which is attached hereto as Exhibit H.

39. By letter dated August 18, 2004, a true copy of which is attached as Exhibit I, RWI again advised Amko of its post-termination obligations under the License Agreement and demanded that Amko immediately cease operating the Facility as a Ramada System Unit and distinguish it in all respects from its former appearance as a Ramada guest lodging facility.

40. Amko continued to misuse the Ramada Marks despite receiving notification from RWI to cease and desist from the misuse of the Ramada Marks.

41. On November 2, 2004, a post termination obligations inspection of the Facility was conducted, during which it was discovered that Amko was continuing to use the Ramada Marks without authorization on all primary signage, folios/registration cards, and the credit card imprinter. A true copy of the November 2, 2004, Post Termination Obligations Checklist inspection report is attached hereto as Exhibit J.

42. On March 11, 2005, a post termination obligations inspection of the Facility was conducted, during which it was discovered that Amko was in compliance with its obligation to terminate its use of all Ramada Marks to induce the traveling public to rent guest rooms at the Facility. A true copy of the March 11, 2005, Post Termination Obligations Checklist inspection report is attached hereto as Exhibit K.

43. Amko had continued to misuse the Ramada Marks despite receiving notification from RWI to cease and desist from the misuse of the Ramada Marks from April 25, 2003, the date of termination, through at least November 2, 2004, the date of the last inspection which uncovered continued infringement, and continues to be in default of its monetary obligations to RWI.

**FIRST COUNT**

44. RWI repeats and makes a part hereof each and every allegation set forth in paragraphs 1 through 43 of the Complaint.

45. Section 32 of the Lanham Act, 15 U.S.C. § 1114(1)(a), provides in pertinent part that "[a]ny person who shall, without the consent of the registrant — use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . . shall be liable in a civil action by the registrant . . . ."

46. Amko marketed, promoted, and rented rooms at the Facility through the unauthorized use of the Ramada Marks, and such use caused confusion or mistake among prospective or actual customers, in violation of Section 32 of the Lanham Act.

47. Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides in pertinent part that "[a]ny person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol . . . or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to affiliation . . . or as to the origin, sponsorship, or approval of . . . goods [or] services . . . shall be liable in a civil action . . . ."

48. The acts of Amko in marketing, promoting, and renting rooms at the Facility, through and with the Ramada Marks, constituted: (a) a false designation of origin; (b) a false and misleading description of fact; and (c) false and misleading representation of fact that caused confusion, mistake, and/or deception, as to the affiliation of Amko's Facility with RWI,

and caused confusion, mistake, and/or deception, to the effect that RWI sponsored or approved of the guest lodging services that Amko provided at the Facility, all in violation of Section 43(a) of the Lanham Act.

49. Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), provides in pertinent part that "[t]he owner of a famous mark shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use in commerce of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this subsection."

50. Amko's use of the Ramada Marks in connection with goods and services at the Facility, after the Ramada Marks became famous, caused dilution and disparagement of the distinctive quality of the Ramada Marks, and lessened the capacity of the Ramada Marks to identify and distinguish the goods and services of RWI, all in violation of Section 43(c) of the Lanham Act.

51. Amko's acts of infringement in violation of Sections 32, 43(a), and 43(c) of the Lanham Act were malicious, fraudulent, willful, and deliberate.

**WHEREFORE**, pursuant to 15 U.S.C. §§ 1114, and 1125(a) & (c), RWI demands judgment against Amko, granting compensatory damages, treble damages, attorneys' fees, prejudgment interest, costs of suit, and such other and further relief as this Court shall deem just and proper.

**SECOND COUNT**

53. Amko repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 52 of the Complaint.

54. Pursuant to Section 3.8.2 of the License Agreement, Amko agreed to allow RWI to examine, audit, and make copies of Amko's financial information, including books, records, and accounts, relating to the gross room revenue earned at the Facility.

55. Amko has engaged in acts and practices, as described, which amount to infringement of the Ramada Marks in an unlawful, unfair, and fraudulent manner which is likely to confuse the public.

56. As a result, Amko owes restitution and the disgorgement of profits, in an amount unknown to RWI, and which amount cannot be ascertained without an accounting of the receipts and disbursements, profit and loss statements, and other financial materials, statements, and books from Amko.

**WHEREFORE**, RWI demands judgment ordering that Amko account to RWI for any and all revenue derived as a result of marketing, promoting, or selling guest lodging services at the Facility through and with the Ramada Marks.

**THIRD COUNT**

57. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 56 of the Complaint.

58. On April 25, 2003, RWI terminated the License Agreement.

59. Section 12 of the License Agreement provides that, in the event of termination of the License Agreement due to action of the Licensee, Amko shall pay liquidated damages to RWI within 30 days of termination.

60. As a result of the termination of the License Agreement, Amko is obligated to pay RWI liquidated damages in the amount of $198,000.00, as calculated pursuant to Section 18.3 of the License Agreement.

61. Notwithstanding RWI's demand for payment, Amko has failed to pay RWI the liquidated damages as required in Section 12 and Section 18.3 of the License Agreement.

62. RWI has been damaged by Amko's failure to pay liquidated damages.

**WHEREFORE,** RWI demands judgment against Amko for liquidated damages in the amount of $198,000.00, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

**FOURTH COUNT**

63. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 62 of the Complaint.

64. By virtue of the termination of the License Agreement, RWI sustained a loss of future revenue over the remainder of the License Agreement.

65. If the Court determines that Amko is not liable to pay RWI liquidated damages as required by Section 12 of the License Agreement then, in the alternative, Amko is liable to RWI for actual damages for the premature termination of the License Agreement.

66. RWI has been damaged by Amko's breach of its obligation to operate a Ramada guest lodging facility for the remaining term of the License Agreement.

**WHEREFORE**, RWI demands judgment against Amko for actual damages in an amount to be determined at trial, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

**FIFTH COUNT**

67. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 66 of the Complaint.

68. Pursuant to Sections 7 and 18.4 and Schedule C of the License Agreement, Amko was obligated to remit Recurring Fees to RWI.

69. Despite its obligation to do so, Amko failed to remit certain of the Recurring Fees due and owing under the License Agreement in the amount, as of the date of this Complaint and inclusive of interest, of $1298.70.

70. Amko's failure to remit the agreed Recurring Fees constitutes a breach of the License Agreement and has damaged RWI.

**WHEREFORE**, RWI demands judgment against Amko for the Recurring Fees due and owing under the License Agreement, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

**SIXTH COUNT**

71. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 70 of the Complaint.

72. At the time of the termination of the License Agreement, Amko was obligated to pay RWI Recurring Fees.

73. Despite its obligation to do so, Amko failed to pay certain of the Recurring Fees due and owing under the License Agreement in the current amount of $1298.70.

74. In addition, Amko benefited from its wrongful use of the Ramada Marks after termination of the License Agreement and paid no royalty or other Recurring Fees to RWI in return for that benefit.

75. Amko's failure to compensate RWI constitutes unjust enrichment and has damaged RWI.

**WHEREFORE**, RWI demands judgment against Amko for the Recurring Fees due and owing under the License Agreement, and all royalties and other Recurring Fees that should be paid to compensate RWI for the period during which Amko misused the Ramada Marks and was thereby unjustly enriched, together with interest, attorneys' fees, costs of suit, and such other and further relief as this Court shall deem just and proper.

**SEVENTH COUNT**

76. RWI repeats and makes a part hereof each and every allegation contained in paragraphs 1 through 75 of the Complaint.

77. Pursuant to the terms of the Guaranty, Aspi Irani and Soon Tae Kang agreed, among other things, that upon a default under the License Agreement, they would immediately make each payment and perform each obligation required of Amko under the License Agreement.

78. Despite their obligation to do so, Irani and Kang failed to make any payments or perform or cause Amko to perform each obligation required under the License Agreement.

79. Pursuant to the Guaranty, Irani and Kang is liable to RWI for Amko's liquidated damages in the amount of $198,000.00, or actual damages in an amount to be determined at trial, Amko's Recurring Fees due and owing under the License Agreement, and for those additional Recurring Fees attributable to the period during which Amko misused the Ramada Marks.

**WHEREFORE**, RWI demands judgment against Aspi Irani and Soon Tae Kang for damages in the amount of all liquidated damages or actual damages and Recurring Fees due and owing under the License Agreement, and all profits, royalties, and other Recurring Fees that should be paid to compensate RWI for the period during which Amko misused the Ramada Marks and was thereby unjustly enriched, together with interest, attorneys' fees, costs of suit and such other and further relief as this Court shall deem just and proper.

**MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Attorneys for Plaintiff

By: ______________________
Lois H. Goodman
A Member of the Firm

**DATED:** January 13, 2006

**CERTIFICATION PURSUANT TO *L. CIV. R.* 201.1(d)(1)**

The within matter does not fall within the requirement for compulsory arbitration set forth in *Local Civil Rule* 201.1(d)(1) in that the relief sought consists of money damages in excess of $150,000.00 exclusive of interest and costs.

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Plaintiff

By: ______________________
Lois H. Goodman
A Member of the Firm

DATED: January 13, 2006

**CERTIFICATION PURSUANT TO *L. CIV. R.* 11.2**

I hereby certify that the within matter in controversy is not the subject of any other action pending in any court, or of a pending arbitration proceeding; no other action or arbitration proceeding is contemplated; and I know of no other parties who should be joined in this action at this time.

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
Attorneys for Plaintiff

By: ______________________
Lois H. Goodman
A Member of the Firm

DATED: January 13, 2006

2006 JAN 20 P 2:46